J-S01043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KNOWLEDGE DANTE FRIERSON | : | |
| | : | |
| Appellant | : | No. 467 MDA 2024 |

Appeal from the PCRA Order Entered March 18, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001063-2016

BEFORE: NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 31, 2025**

Knowledge Dante Frierson appeals from the March 18, 2024 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The relevant facts of this case were set forth by a prior panel of this Court as follows:

> On October 13, 2015, at approximately 9:00 p.m., Keith Freeman, Jr. (Freeman) was in his home [on Brandon Avenue in Lycoming County] with his children. His girlfriend, Katrina Washington (Washington), was at work. Freeman testified that his son told Freeman that someone was at the door. Freeman did not open the door, but he saw an individual [(Appellant)] on the front porch [whom] he did not recognize. [Appellant] asked for a person whose name Freeman also did not recognize. Freeman

---

[*] Former Justice specially assigned to the Superior Court.

told [Appellant] he had the wrong house, and [Appellant] walked [away in a westerly direction].

Freeman testified that [Appellant's] demeanor made him nervous because [Appellant] did not look him in the eye and had his hands in [the pockets] of his [hooded sweatshirt]. After [Appellant] left, Freeman decided he did not want Washington to walk home from work. Freeman called his mother and aunt and asked one of them to pick up Washington. His aunt, Carolyn Barr (Barr), said that she would pick up Washington. Freeman called Washington and told her Barr would pick her up after work.

[Appellant] knocked on the door again, and Freeman told him again that he had the wrong address. Freeman testified that [Appellant] insisted that he had the right address and that someone sent him. Freeman also testified that after the second encounter, he ran upstairs and got his gun.

When Barr and Washington arrived at the house, they noticed [Appellant] was waiting around outside the house and was staring at them. Freeman testified that he also called his friend Tyson Bolden (Bolden). Bolden came to Freeman's house shortly after Washington and Barr arrived, and Freeman believed Bolden brought a handgun with him.

Freeman, Washington, Barr, and Bolden discussed the situation in the house. When the time came for Barr to leave, Freeman and Bolden decided to walk Barr back to her car. As they were walking down the steps of the house, Freeman testified that Barr screamed his nickname, Dump, and suddenly he and [Appellant] were face to face. Washington, who was inside the house, also testified that she heard Barr scream, Dump, followed by gunshots. Freeman and [Appellant] struggled over [Appellant's] gun as they fell to the ground near the bottom of the steps, and a shot went off. Freeman testified that he jumped off of [Appellant] and that [Appellant] shot again. [Appellant] and Freeman then exchanged gunfire as Freeman backed away east and [Appellant] headed

west. Freeman testified that he fired about three or four shots, and he thought [Appellant] fired about six shots. Freeman testified that he threw his weapon into the bushes and that he saw [Appellant] limping in an unnamed alley after the shooting stopped. At some point during the gunfire exchange, a bullet struck Barr in the torso and she died soon after. Dr. Michael Johnson (Johnson), the forensic pathologist who performed Barr's autopsy testified that the cause of Barr's death was a single gunshot wound to her abdomen. Johnson concluded that the manner of her death was homicide.

**Commonwealth v. Frierson**, 220 A.3d 693 (Pa.Super. 2019) (unpublished

memorandum at *1) (brackets in original; citations and some brackets

omitted).

The PCRA court summarized the relevant procedural history of this case

as follows:

[Appellant] was charged with criminal homicide and related charges from a shooting that occurred on October 13, 2015, in the 400 block of Brandon Avenue, City of Williamsport, Lycoming County, PA. [Appellant's] jury trial began October 30, 2017. On November 2, 2017, [Appellant] was found guilty by the jury of third-degree murder, aggravated assault (attempted serious bodily injury to Keith Freeman), aggravated assault with a deadly weapons, possessing an instrument of crime, and tampering with evidence. Trial counsel stipulated to [Appellant's] prior record and this Court sitting without a jury, found [Appellant] guilty of the charges of persons not to possess a firearms and firearms not to be carried without a license. The Court sentenced [Appellant] to an aggregate of 26 to 60 years [on February 20, 2018].

Trial counsel filed timely post sentence motions, which the court denied.

PCRA court opinion, 3/18/24 at 1-2 (footnotes and extraneous capitalization omitted).

On July 31, 2019, a panel of this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on January 22, 2020. *See Commonwealth v. Frierson*, 220 A.3d 693 (Pa.Super. 2019) (unpublished memorandum), *appeal denied*, 223 A.3d 658 (Pa. 2020). On October 2, 2020, Appellant filed a timely *pro se* PCRA petition and Nicole J. Spring, Esq. (hereinafter, "PCRA counsel") was appointed to represent him. PCRA counsel filed amended PCRA petitions on Appellant's behalf on May 7 and July 16, 2021.

On January 11, 2022, the PCRA court granted an evidentiary hearing on the following issue: whether the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny by failing to disclose its intent to dismiss the pending charges against its primary witness at trial, Freeman. An evidentiary hearing was ultimately held on September 27, 2022. Prior to its decision on the *Brady* issue, the PCRA court held an additional hearing on October 16, 2023 on the issue of whether Appellant's trial counsel[1] was ineffective in failing to cross-examine Freeman about his pending charges.

---

[1] Appellant was represented at trial by Robert Hoffa, Esq. (hereinafter, "trial counsel").

Following these hearings, the PCRA court entered an order dismissing Appellant's PCRA petition on March 18, 2024. This timely appeal followed.[2]

Appellant raises the following issues for our review:

> I. Does the Commonwealth's failure to disclose its intent to [*nolle*] *pros* charges pending against the primary witness and sole eyewitness violate [*Brady*]?
>
> II. Did trial counsel provide ineffectiveness by failing to preserve the *Brady* violation issue, failing to request a corrupt source jury instruction and failing to cross-examine the primary witness about his pending criminal charges that arose from the incident?
>
> III. Did the [PCRA] court abuse its discretion by denying request for an evidentiary hearing on issues raised in the Appellant's PCRA petition including:
>
>> A. Trial counsel's failure to challenge the racial composition of the jury array;
>>
>> B. Trial counsel's failure to investigate or attempt to locate other eyewitnesses to the incident;
>>
>> B. Trial counsel's failure to retain a ballistics expert;
>>
>> C. Trial counsel's failure to allege a *Franks*[3] violation concerning misstatements or omissions in the affidavit of probable cause?

---

[2] Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

Appellant's brief at 4. For the purposes of our review, we have elected to address Appellant's claims in a slightly different order than presented in his appellate brief; some of his claims will be addressed concomitantly.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Patterson*, 143 A.3d 394, 397 (Pa.Super. 2016) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

## I. Underlying *Brady* violation

Appellant first argues that the PCRA court erred in failing to find that the Commonwealth violated *Brady* by failing to disclose its intent to *nolle pros* the pending charges against its primary witness at trial, Freeman. Appellant's brief at 9. We disagree.

Our Supreme Court has recognized that "[t]he crux of the *Brady* rule is that due process is offended when the prosecution withholds material evidence

- 6 -

favorable to the accused." ***Commonwealth v. Reid***, 259 A.3d 395, 420 (Pa. 2021) (citation omitted). A violation of ***Brady*** requires that the Commonwealth "intentionally withheld exculpatory evidence which was material to the issues to be tried or evidence which materially undermines the credibility of a key prosecution witness." ***Commonwealth v. Mulholland***, 702 A.2d 1027, 1033 (Pa. 1997). Thus, to establish a violation under ***Brady*** and its progeny, a defendant must prove that:

> (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

***Commonwealth v. Bagnall***, 235 A.3d 1075, 086 (Pa. 2020) (citation omitted).

Upon review, we discern no error on the part of the PCRA court in concluding that Appellant has failed to establish a ***Brady*** violation. The record reflects that Appellant presented no credible evidence at the evidentiary hearings that the Commonwealth offered to dismiss charges against Freeman in exchange for his testimony at trial, or withheld this fact from Appellant or his trial counsel. On the contrary, Appellant had every opportunity to call Freeman as a witness at the PCRA hearings to clarify the issue, but failed to do so. ***See*** notes of testimony, 9/27/22; notes of testimony 10/16/23.

The record reveals that Freeman testified at Appellant's trial that he was not promised anything by the Commonwealth in exchange for his testimony.

Notes of testimony, 10/30/17 at 83. Assistant District Attorney ("ADA") Martin Wade further testified at the PCRA hearing that it was only when he was promoted to First ADA in 2018 and the Freeman case came across his desk that he decided to dismiss the charges against him. Notes of testimony, 9/27/22 at 17. First ADA Wade noted that he had no direct involvement in the prosecution of Appellant or Freeman, and never suggested to Freeman nor his counsel that his charges would be **nolle prossed**. **Id.** at 16, 18.

Moreover, Lycoming County District Attorney Kenneth Osokow ("DA Osokow") explicitly stated that there was no plea agreement or offer made to Freeman in exchange for his testimony at trial and, in fact, he was upset when he found out Freeman's charges were ultimately dismissed:

> [T]here was no – there was no agreement with [Freeman] at the time of trial in this case. There was no indication to [Freeman] at the time of trial of this case he was going to get an agreement and quite frankly after the agreement was made and I believe the charges were **nolle prossed**, which occurred sometime – I don't remember when this year when I became aware if it I was – as the District Attorney I was upset. I had no part – I was not a party to that. I would not have done that, but there was no agreement in the first place.

Notes of testimony, 6/29/18 at 8.

Based on the foregoing, we agree with the PCRA court's determination that "no such agreement existed during the time of trial[.]" PCRA court opinion, 3/18/24 at 21. Accordingly, we discern no error on part of the PCRA court in rejecting Appellant's claim that the Commonwealth violated **Brady**.

## II.   Ineffectiveness of counsel

Appellant's next three claims challenge purported ineffectiveness of his trial counsel.  To prevail on a claim of ineffective assistance of counsel under the PCRA, a [Appellant] must establish the following three factors:  "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced."  *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), *appeal denied*, 104 A.3d 523 (Pa. 2014).

> [A] PCRA [Appellant] will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks and citation omitted; some brackets in original).  "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant."  *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 487 (Pa. 2011).

**A.**

We begin by addressing Appellant's contention that trial counsel was ineffective in failing to raise or preserve the aforementioned *Brady* violation issue.  Appellant's brief at 17, 20.

Upon review, we find that Appellant has failed to prove the first and third prongs of the aforementioned ineffectiveness test; namely, that this claim has arguable merit and that he was prejudiced by counsel's inaction. As discussed, *supra*, the underlying *Brady* claim lacks merit. It is well settled in this Commonwealth that counsel will not be found to be ineffective for failing to raise or pursue a meritless claim. *See Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004). Accordingly, Appellant was not prejudiced by trial counsel's failure to pursue such relief under *Brady*.

**B.**

Appellant next argues that trial counsel was ineffective for failing to cross-examine Freeman with regard to his pending criminal charges "and the potential leniency or dismissal of those charges in exchange for his testimony." Appellant's brief at 20-21.

Our review of the record establishes that Appellant has failed to prove the second prong of the aforementioned ineffectiveness test; namely, that trial counsel had no reasonable strategic basis for cross-examining Freeman in the manner in which he did.

Here, the record reflects that trial counsel testified at the PCRA hearing that he elected not to cross-examine Freeman with regard to his pending criminal charges and whether they were dismissed in exchange for his testimony because the Commonwealth had already questioned Freeman at length on his pending charges on direct examination. *See* notes of testimony,

9/27/22 at 9. Trial counsel intimated that he engaged in an "calculated and pointed" cross-emanation of Freeman due to his belief that "his credibility was at issue," and did not think that drawing further attention to Freeman's pending charges would have been in Appellant's best interests. *Id.* at 10-11.

> Q. During the time that [DA Osokow] asked [Freeman] about his pending charges, you indicated that you did not follow up on cross-examination about that, correct?
>
> A. That's my recollection, yes.
>
> Q. Is it fair to day that that, too – well, let me ask it this way. Was that done for strategic purposes, meaning, you didn't want to underscore or highlight that particular situation?
>
> A. Probably. I mean my whole goal was to impeach his credibility as far as what occurred that evening. I don't know – I think maybe in my closing I may have mentioned the fact that he has charges pending, but I don't recall that either.

*Id.* at 11-12.

"When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. *Commonwealth v. Evans*, 303 A.3d 175, 183 (Pa.Super. 2023) (citation omitted). "Our evaluation of counsel's performance is highly deferential[,]" *Commonwealth v. Robinson*, 278 A.3d 336, 345 (Pa.Super. 2022) (citation omitted). "Counsel is entitled, as a matter of strategy, to forego even

- 11 -

meritorious issues in favor of issues he believes pose a greater likelihood of success." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1276 n.9 (Pa. 2016).

Based on the foregoing, we agree with the PCRA court that Appellant failed to establish that trial counsel lacked a reasonable strategic basis for electing not to cross-examine Freeman in this fashion. Accordingly, Appellant's second ineffectiveness claim must fail.

## C.

Appellant next argues that trial counsel was ineffective in failing to request a "corrupt and polluted source" jury instruction with regard to Freeman's testimony. Appellant's brief at 20, 26-29.

Upon review, we find that Appellant has again failed to satisfy the first prong of the aforementioned ineffectiveness test; namely, that this claim has arguable merit.

> It is well settled that whether to request additional points for charge is one of the tactical decisions within the exclusive province of counsel. We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial. Rather, we should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that Appellant meet his burden of proving that his attorneys had no reasonable basis for their action.

***Commonwealth v. Derk***, 719 A.2d 262, 265 (Pa. 1998) (citations and internal quotation marks omitted).

The "corrupt and polluted source" jury instruction "is designed specifically to address situations where one accomplice testifies against the

other to obtain favorable treatment." ***Commonwealth v. Lawrence***, 165 A.3d 34, 45 (Pa.Super. 2017) (citation omitted)  "In any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." ***Id.*** at 44 (citation omitted).

Instantly, the record reflects that a "corrupt and polluted source" jury instruction was not warranted in this case and there was no reasonable basis for trial counsel to request such an instruction because Freeman was neither an accomplice nor co-conspirator of Appellant.  Accordingly Appellant's ineffectiveness claim must fail.

## III.  Evidentiary Hearing

In his final claim, Appellant contends that the PCRA court erred in failing to conduct an evidentiary hearing on trial counsel's purported failure to investigate or attempt to locate other eyewitnesses to the incident; to challenge the racial composition of the jury array; to retain a ballistics expert; and to argue that there were material misstatements or omissions in the affidavit of probable cause.  Appellant's brief at 30-38.

This court has long recognized that "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary."  ***Commonwealth v. Maddrey***, 205 A.3d 323, 328

(Pa.Super. 2019) (citation and internal brackets omitted), **appeal denied**,
218 A.3d 380 (Pa. 2019).

Instantly, the PCRA court concluded that an evidentiary hearing on these
particular issues was not warranted given the lack of witness certifications and
Appellant's failure to pleas sufficient facts in his amended petitions.
Specifically, the PCRA court held:

> [Appellant] alleges that trial counsel failed to conduct
> an investigation to locate Tyson Bolden and his
> girlfriend. Freeman would have told the police that
> Bolden and Bolden's girlfriend were with him at the
> house the night of the shooting. [Appellant] alleges
> no other facts or basis for the allegation. In fact, PCRA
> counsel was not able to locate Bolden and his
> girlfriend or to provide witness certifications as to the
> substance of their testimony had it been requested at
> trial. This alone was a basis to deny an evidentiary
> hearing on this claim.

> . . . .

> [Appellant] alleged that trial counsel was ineffective
> for failing to raise the question of the race of the
> prospective jurors and neither challenging the jury
> array nor preserving a record of the race of the jurors.
> [Appellant] raised this issue for the first time in his
> PCRA petition, and he did not submit any witness
> certifications in support of this claim. [Appellant]
> failed to set forth any information regarding the
> composition of the jury panel, or any errors trial
> counsel may have made during **voir dire**. In fact,
> there is no indication as to whether any African
> Americans had been present for jury selection.

> . . . .

> [Appellant] alleges that trial counsel was ineffective
> for failing to obtain a ballistics expert but does not
> allege how the lack of the ballistics expert was a

> genuine issue of material fact justifying collateral relief. [Appellant] did not submit any witness certifications in support of this claim. … [Appellant] has failed to allege how calling an expert for the defense at trial would have been helpful to the defense. [Appellant] cannot point to how such an expert would have testified to any facts or opinions that would have exculpated him.
>
> . . . .
>
> [Appellant] alleges in his second amended PCRA petition that the Commonwealth included material misstatements and/or omissions in his affidavit of probable cause. However, PCRA counsel in neither the petition nor at the conference pointed to specific instances in which [Appellant] was alleging omissions or misstatements. PCRA counsel alleges only that there was insufficient evidence in the affidavit to establish probable cause. Additionally, no witness certifications were provided to indicate who, if anyone, could testify regarding any misstatements or omissions.

PCRA court opinion, 3/18/24 at 30, 33-36 (footnote omitted).

Following our careful review, we agree with the PCRA court's assessment that no evidentiary hearing was warranted on these claims and adopt the aforementioned analysis of the PCRA court as our own.

Accordingly, for all the forgoing reasons, we discern no error on the part of the PCRA court in dismissing Appellant's petition and affirm its March 18, 2024 order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/31/2025